# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Susan Miller, individually and as a representative of a class of similarly situated persons,<br><br>      Plaintiff,<br><br>-v-<br><br>CenturyLink, Inc., a Louisiana corporation; CenturyLink Communications, LLC, a Delaware limited liability company; CenturyLink Public Communications, Inc., a Florida corporation ; CenturyLink Sales Solutions, Inc., a Delaware corporation; Qwest Corporation, a Colorado corporation; and CenturyTel of Wisconsin, LLC, a Louisiana corporation.<br><br>      Defendants. | Case No. 17-cv-648<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Susan Miller, individually and as the representative of a class of similarly situated persons, through the undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. This is a class action against Defendants CenturyLink, Inc., CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., Qwest Corporation, and CenturyTel of Wisconsin, LLC (hereinafter collectively referred to as "Defendants" or "CenturyLink") based on their unlawful activity, described below.

2. CenturyLink engaged in misleading and deceptive conduct by adding unauthorized charges to customers' internet or telephone accounts in the state of Wisconsin. As outlined further below, Defendants' conduct violated applicable consumer protection statutes, breached customer contracts, and resulted in Defendants being unjustly enriched at the expense

of their customers.  The relief sought, including an accounting by Defendants of their billing practices and the payment of refunds for all overcharges, is necessary and appropriate.

## PARTIES

3.     Plaintiff Susan Miller ("Ms. Miller" or "Plaintiff") is a citizen of the state of Wisconsin who resides in La Crosse, Wisconsin.

4.     Plaintiff is a qualified and appropriate representative of a group of customers of Defendants who are similarly situated and have suffered harm in the same manner as Plaintiff as a result of the actions and/or omissions of the Defendants described within (hereinafter "Class Members").

5.     CenturyLink, Inc. is a Louisiana corporation doing business in the state of Wisconsin.  Upon information and belief, CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., Qwest Corporation, and CenturyTel of Wisconsin are direct or indirect subsidiaries of CenturyLink, Inc. and are all directly or indirectly controlled by CenturyLink, Inc.   All profits of CenturyLink Communications, LLC, CenturyLink Public Communications, Inc., CenturyLink Sales Solutions, Inc., Qwest Corporation, and CenturyTel of Wisconsin, including those obtained from the practices complained of herein, are eventually up-streamed to CenturyLink, Inc., and reported on its financial statements.

6.     As stated on CenturyLink's website, "CenturyLink (NYSE: CTL) is a global communications and IT services company focused on connecting its customers to the power of the digital world. CenturyLink offers network and data systems management, big data analytics, managed security services, hosting, cloud, and IT consulting services. The company provides broadband, voice, video, advanced data and managed network services over a robust 265,000-

2

route-mile U.S. fiber network and a 360,000-route-mile international transport network."
Available at: http://ir.centurylink.com/CorporateProfile.aspx?iid=4057179.

7.     CenturyLink, Inc. describes its business operations as follows in its 10-K submitted to the Securities and Exchange Commission for its 2016 operations:

> Based on our approximately 11.1 million total access lines at December 31, 2016, we believe we are the third largest wireline telecommunications company in the United States. We operate 74% of our total access lines in portions of Colorado, Arizona, Washington, Minnesota, Florida, North Carolina, Oregon, Iowa, Utah, New Mexico, Missouri, and Idaho. We also provide local service in portions of Nevada, Wisconsin, Ohio, Virginia, Texas, Nebraska, Pennsylvania, Alabama, Montana, Indiana, Arkansas, Wyoming, Tennessee, New Jersey, South Dakota, North Dakota, Kansas, South Carolina, Louisiana, Michigan, Illinois, Georgia, Mississippi, Oklahoma, and California. In the portion of these 37 states where we have access lines, which we refer to as our local service area, we are the incumbent local telephone company.
>
> At December 31, 2016, we served approximately 5.9 million broadband subscribers and 325 thousand Prism TV subscribers. We also operate 58 data centers throughout North America, Europe and Asia.

Available at: http://ir.centurylink.com/sec-filings.

8.     At all material times, Defendants have maintained legal authority to transact business in Wisconsin, and have maintained operations throughout the state of Wisconsin.

9.     As a result of the challenged practices, including advertising rates and confirming those rates in communications with Class Members that were much less than those actually charged, Defendants generated substantial sales of their services and merchandise within Wisconsin during the relevant Class Period, resulting in the unlawful collection of significant fee revenue from Plaintiff and the members of the Class.

10.    Upon information and belief, each of the Defendants was the agent of each of the remaining Defendants, and was at all times herein mentioned acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of and for such agency.

11.    Upon information and belief, CenturyLink, Inc. at all relevant times, completely dominated and controlled the other Co-Defendants.  Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of the Defendants named in this Complaint within the scope of their respective employment.

## JURISDICTION AND VENUE

12.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate; and (2) members of the proposed Class are citizens of a state different from Defendants.

13.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in the state of Wisconsin.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff and Class Members' claims occurred in the Western District of Wisconsin as Defendants: (a) are authorized to conduct business in this district and have intentionally availed themselves to the laws within this district; (b) currently conduct substantial business in this district, including operating a call center in La Crosse, Wisconsin,

from which much of the alleged deceptive sales and conduct emanate; and (c) are subject to personal jurisdiction in this district.

## FACTS

15.    On June 14, 2017, former CenturyLink employee Heidi Heiser filed a whistleblower complaint in the Superior Court of Arizona for Maricopa County alleging that she was terminated for reporting to her supervisors and the CEO unlawful billing practices she observed and refused to take part in as a sales representative. *See Heiser v. CenturyLink, Inc.*, No. 17-cv-02333-DGC (D. Ariz.) (following removal).

16.    As explained in the *Heiser* complaint, Defendants maintain incentive programs for their employees and agents that provide financial incentives to charge customers for services they do not order, or to overcharge customers for services they did order.  For example, Ms. Heiser alleges that "multiple CenturyLink customers were being designated as having additional accounts that they informed Ms. Heiser they did not request or approve."  Heiser Compl. ¶ 13. According to Ms. Heiser, CenturyLink allowed persons to add services or lines, which were not approved by the customers, "which would then inure to the direct or indirect benefit of such CenturyLink agents or their superiors," as well as CenturyLink.  *Id.* ¶ 15.

17.    Rather than uphold their duty to act in good faith and to ensure that they accurately charge consumers for services that consumers authorized, Defendants have shifted that burden to consumers and essentially dared them to locate the overcharges and then demand refunds.  As explained in the *Heiser* complaint, when customers complained about the addition of unauthorized lines or services, "CenturyLink's policy was generally to inform the complaining customer that CenturyLink's system indicated the customer had approved the

service . . . and to therefore demand payment for any such extra services through the date of the complaint, and to only rectify the problem on a going-forward basis." *Id.* ¶ 19.

18.    According to Ms. Heiser, CenturyLink managers were well aware of these issues because "the customer complaints related to unauthorized services and charges were so prolific." *Id.* ¶ 20.   In fact, it became clear to Ms. Heiser that CenturyLink management had not only created incentives that encouraged CenturyLink agents to add unauthorized lines and services to customer accounts, these same managers "were knowingly and intentionally ignoring the customer complaints about such practices and enforcing policies that allowed CenturyLink to keep payments received on unauthorized charges and to encourage more such payments." *Id.* ¶ 22.

19.    Ms. Heiser's allegations of what she observed, and what the CenturyLink corporate culture encouraged, are consistent with the experiences of thousands of consumers who have been misled by CenturyLink. Upon information and belief, Ms. Heiser's experience is not unique. Multiple other CenturyLink employees, including those who have worked or work at the La Crosse, Wisconsin call center, have had similar experiences to Ms. Heiser's.

20.    Many current and previous CenturyLink customers, including Wisconsin consumers, have posted messages on social media and consumer watchdog websites, describing the type of deceptive and unlawful conduct described in the *Heiser* complaint.   By way of example, the following consumer complaint is emblematic of CenturyLink's practices:

⊙ La Crosse, Wisconsin   Nov 10, 2015

⭐☆☆☆☆   1.0   Details                                              0 comments

I have been a Century link customer for a few months now.My average weight time has been over 20 min every time I call in.

| Related: Centurylink - False advertisement

I was told it would cost $65 a month for Internet and Cable. there was a problem with the billing and I have been getting charged 95 ish every month. I called and and was put on hold for the normal 20 min... no big surprise there.

They told me I only get that deal if I do auto pay. Set that up and nothing changed. Now they say they don't have this special... WTF.

My account # is 448443876 I am hoping like *** a get a call from century link.

I would recommend staying as far away from this company as possible.

Available at https://centurylink.pissedconsumer.com/centurylink-20151110731951.html. This site contains many similar complaints regarding CenturyLink's billing practices, which collectively demonstrate a pattern and practice of Defendants' violations of applicable consumer protection statutes, breach of customer contracts, and unjust enrichment at the expense of its customers.

21.    The ConsumerAffairs.com website also contains numerous complaints about CenturyLink, and specifically regarding CenturyLink's deceptive billing practices, which can be found at https://www.consumeraffairs.com/cell_phones/centurylink.html.

22.    The following excerpt was posted on www.google.com as a review of the CenturyLink office located in La Crosse, Wisconsin:

> I wanted to give CenturyLink a chance, but after 8 months of head aches I finally decided to cancel the service. Initially when I was offered my plan with CenturyLink the sales person told me that I would get the product for a specific price which turned out to be a

7

lie. One thing they don't tell you when your [*sic*] starting service is that if you have a partial month of service your promotional pricing does not apply. They tried charging me 80 dollars for 2 weeks of service because the date I started to receive service was not on what they consider the starting day of they [*sic*] billing cycle they have. So within the first month of service I was already calling them about their bad business practices. I ended up calling them up several times to have them correct my bill since I started getting charged random amounts over the next couple months. I got tired of calling and just paid the bill after that. They also don't tell you that they are going to charge you a broadband fee. I was told that this fee is to cover customer service and technical support cost. . . . When I called CenturyLink to cancel they informed me that I would have to pay a 100 dollar cancellation fee due to the 1 year contract I had signed. I told the person that I had not signed a contract and that the original person that sold me the plan worded it as promotional pricing and not as a contract. That person could not do anything for me so I ended up escalating it to a supervisor. The supervisor told me that I could pay the 100 dollar fee or pay the difference between the promotional pricing and their regular pricing which would add up to well over 400 dollars. I told him it was crazy that I would have to pay to get out of a contract that I didn't even sign. He told me that they take verbal signatures over the phone on signing the contract. I informed him that I was never informed of the fact that I was signing a 12 month contract with them. After talking with this guy for an hour I finally got them to reduce the fee, but am still unhappy I have to pay any fee at all. This company does not grasp the idea of business ethics or the idea of trying to offer a great customer experience. All they are interested in is making a quick buck.

Available at:
https://www.google.com/search?q=CenturyLink,+40+Copeland+Avenue,+Ste+109+B,+La+Crosse,+WI+54601#lrd=0x87f955002aa482cb:0x9db3a31a8b9acf99,1.

23.    Specifically, Defendants asserted that customers were responsible for alerting CenturyLink to any overbilling, and that they were required to report any billing disputes within three months.  Upon information and belief, CenturyLink would not immediately honor a request for a refund of any overpayment if it was not within the past three months.

24.    Many customers grew so frustrated with CenturyLink that they terminated CenturyLink's services, only to be threatened with or face an "early termination fee" that was

required to be prorated, but the terms of the proration, according to CenturyLink, were left to CenturyLink's sole discretion.

25.     Additionally, CenturyLink obscured and misrepresented fees that would be charged, assessing an "Internet Cost Recovery Fee" or a "Broadband Recovery Fee" on customer billing records to make it appear like a government-mandated tax or other regulated fee, when in fact it was not. Rather, it was part of CenturyLink's monthly recurring internet service fees, deceptively separated out from any promotional rate to make promotional base rates appear lower to customers.

26.     Further, searching Twitter and Facebook with the word "CenturyLink" and any number of additional keywords—"scam," "fraud," "ripoff," and "bill"—provides significant levels of discord, desperation, and demands from victims to remedy CenturyLink's unlawful practices. A Google search of "CenturyLink Complaints" provides similar results.

27.     Upon information and belief, at least one state's Attorney General has investigated and entered into an "assurance of discontinuance" with CenturyLink which prohibits the conduct described herein, including billing consumers at higher rates than represented. *See Approval of Assurance of Discontinuance, In the Matter of Qwest Corp. d/b/a CenturyLink QC*, No. CV 2016-002842 (Sup. Ct., Maricopa Cty., Ariz. – filed April 13, 2016). Nonetheless, CenturyLink's unlawful conduct remains ongoing. Other states' Attorneys General have commenced actions or investigations into Defendants' practices, including one by the Minnesota State Attorney General. *State of Minnesota, by its Attorney General, Lori Swanson v. CenturyTelBroadband Svcs. LLC, et al.*, No. 02-CV-17-3488, Complaint (Dist. Ct., Anoka Cty., Minn. – filed July 12, 2017).

28.     The Better Business Bureau ("BBB") has also identified a pattern of consumer complaints regarding CenturyLink's deceptive billing practices.  According to the BBB Website:

> CenturyLink consumers are alleging sales practice issues with this business.  They state they are often charged more than the price they agreed to when signing up for the service, and that they do not receive the speed and quality that is promised by sales representatives.  BBB has also received several complaints regarding customer service issues, specifically that the business is not responsive to their questions or concerns, or will offer to reduce rates but the customers tell BBB the reduction does not go into effect on their bills.
>
> One consumer explained that they have contacted CenturyLink 47 times since signing up in order to have the overcharge fixed, but the bill has not reflected an adjustment.

Available at https://www.bbb.org/denver/news-events/news-releases/2017/01/bbb-warning-centurylink/.

29.     The foregoing demonstrates that Defendants have made far more than the odd mistake or rare miscommunication. On the contrary, it demonstrates that Defendants acted at the expense of unsuspecting consumers who had placed their trust in Defendants to bill them accurately, honestly, and only withdraw from their bank accounts (many of which were set up for electronic autopay deductions) the amounts actually due and agreed to.  Despite their duty to bill consumers for amounts actually authorized and agreed to, Defendants attempt to shift the burden to the consumers to locate overcharges and then demand refunds within a short time frame.

30.     The amounts billed to each consumer each month are relatively small (less than $200) and therefore, Defendants know that certain consumers will have little time to actively monitor and immediately seek corrections when appropriate. Defendants attempt to take

advantage and exploit this. This type of catch-us-if-you-can policy is unfair, deceptive and misleading.

31.     The types of practices described above have affected and continue to affect Plaintiff and members of the Class of other CenturyLink subscribers in Wisconsin.

32.     Plaintiff Miller is an individual living in La Crosse, Wisconsin.

33.     Ms. Miller is a physically disabled individual and is dependent on the internet for managing her finances; connecting socially with her friends, family, and relatives; for entertainment; for her medical needs; and to feel connected to the outside world.

34.     Ms. Miller has been a customer of CenturyLink for approximately 10 years. Every year for the last five years, she enrolled in a CenturyLink promotional rate and, every year, CenturyLink charged Ms. Miller more than the promised rate until she complained.  Ms. Miller spent many hours on the phone with CenturyLink customer service representatives to correct her rate so that it reflected the promotion she was offered, but CenturyLink never offered to correct her bills retroactively.

35.     By way of example, in February 2016, Ms. Miller called CenturyLink to obtain a promotional rate for her internet, telephone, and television services.  During this telephone call, Ms. Miller was promised rates and discounts that she later learned to be false and deceptive.

36.     Within the first couple months, Ms. Miller noticed that she was being charged more than she was promised as part of the promotional rate.

37.     Ms. Miller called CenturyLink to complain about these overcharges and spent a significant amount of time on the phone with CenturyLink customer service representatives.  Ms. Miller then found herself caught in a web of misdirection, deceptive statements, and pass-offs from one call operator to the next, leading to one agent accusing and blaming another for the

incorrect rate.  Further, during this call, CenturyLink customer service representatives attempted to convince Ms. Miller to purchase new services, including an attempt to get Ms. Miller to purchase a cellular phone from CenturyLink.  After nearly two hours, CenturyLink agreed to correct the problem going forward but refused to correct the problem retroactively.

38.     By way of another example, in the winter of 2017, Ms. Miller called CenturyLink again to obtain a promotional rate for her internet, telephone and television service.  Again, Ms. Miller was promised rates and discounts that she later learned to be false and deceptive.

39.     After several months, Ms. Miller noticed that CenturyLink was billing her approximately $20 more than the promotional rate that CenturyLink had promised in February 2017.  Ms. Miller called CenturyLink about this problem and, as before, spent nearly two hours on the phone with multiple customer representatives.  These customer service representatives repeatedly told Ms. Miller that she was being charged the rate to which she had agreed and that CenturyLink had done nothing wrong.  Finally, frustrated that CenturyLink was refusing to fix the problem, Ms. Miller said she was going to switch to another internet service provider.  At this point, a CenturyLink customer service representative told Ms. Miller that someone had forgotten to apply a discount and that this would be fixed going forward. As before, CenturyLink refused to refund amounts that had already been billed out.

40.     Several months later, Ms. Miller noticed that her bill went up by approximately $10, which raised her bill above the amount she had been promised as a promotional rate.

41.     When Ms. Miller called to complain about this new rate, CenturyLink informed her that her bills were higher because there was a rate hike that affected everyone in the region. CenturyLink refused to correct the problem.

42.     Throughout the above examples, CenturyLink continued to charge Plaintiff an "Internet Cost Recovery Fee." The bills Ms. Miller received contain no description that explains this fee and, further, this fee was not disclosed to Ms. Miller when CenturyLink offered her promotional rates.

43.     By reason of the foregoing, Ms. Miller has paid at least $200 to CenturyLink in unauthorized charges. Ms. Miller has been damaged and incurred pecuniary loss as a result of CenturyLink's unlawful and deceptive practices.

## CLASS ACTION ALLEGATIONS

44.     This action is brought, and may properly be maintained, as a class action under Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

45.     The Class is defined to include: "Any person or public or private entity, who contracted with Defendants for telephone, television, or internet service in the state of Wisconsin during the relevant Class Period" (referred to herein as the "Class"). The "Class Period" for the Class dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced and continues through the present and the date of judgment.

46.     Excluded from the Class are Defendants, their current employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; the undersigned counsel for Plaintiff and their employees; and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

47. This action satisfies the predominance, commonality, typicality, numerosity, superiority, adequacy, and all other requirements of Rule 23 of the Federal Rules of Civil Procedure.

**(a) Numerosity:** The Class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based thereon alleges, that thousands of consumers have been victimized by CenturyLink's practices in Wisconsin, in the manner described above.

**(b) Commonality:** Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class. The common questions of law and fact include, but are not limited to:

(i)      Whether Defendants engaged in a practice or act with intent to sell, distribute, increase the consumption of their services, or with intent to induce the public in any manner to enter into any contract or obligation relating to their services, made, published, disseminated, circulated or otherwise placed before the public an advertisement, announcement, statement or representation of any kind to the public relating to such services or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading;

(ii)    Whether Defendants intended to cause confusion or misunderstanding among consumers regarding the prices of telecommunications services and whether Defendants intended not to honor its quoted prices;

(iii)   Whether Defendants maintained contracts with hidden or undisclosed terms requiring consumers to discover overcharges within a certain amount of time, without regard to whether such charges were permissible or allowed by law;

(iv)    Whether Defendants made misrepresentations or omissions of material fact about their quoted monthly prices and the nature of their telecommunications services and billings;

(v)     Whether Defendants breached implied or explicit contractual obligations to subscribers or deceptively billed for services not being offered, not contemplated, or not agreed upon;

(vi)    Whether Defendants breached the implied covenant of good faith and fair dealing made part of all contracts;

(vii)   Whether Defendants should be required to conduct an equitable accounting and provide refunds; and

(viii)  Whether Defendants have been unjustly enriched.

**(c) Typicality:** Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the members of the Class sustained damages arising out of Defendants' wrongful and deceptive conduct as alleged herein.

**(d) Adequacy:** Plaintiff and the undersigned counsel will fairly and adequately protect the interests of the Class Members. Plaintiff has no interest that is adverse to the interests

of the other Class Members and has hired counsel experienced in class actions and complex litigation.

**(e) Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the Class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation will also prevent the potential for inconsistent or contradictory judgments.

**(f) Public Policy Considerations:** When a company or individual engages in deceptive and predatory conduct with a large number of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the Class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the court system. There is a

16

well-defined community of interest in the questions of law or fact affecting the Class Members in that the legal questions of consumer fraud, breach of contract, and other causes of action, are common to the Class Members. The factual questions relating to CenturyLink's wrongful conduct and their ill-gotten gains are also common to the Class Members.

**(g) Risk of Continuing Harm:** The practices complained of are of an ongoing and continuing nature. Most Class Members remain unaware of the practices complained of. The risk of continuing and future harm from the practices complained of continues to exist making injunctive, declaratory, and equitable relief appropriate and necessary.  For example, even in instances where CenturyLink has corrected bills, CenturyLink still includes additional charges such as a "Broadband Recovery Fee" or "Internet Recovery Fee," without clearly disclosing this fee to consumers and without providing any explanation as to the purpose of this charge.  Absent such relief, the amounts Defendants will improperly collect in the future will exceed that already collected. Injunctive and declaratory relief barring Defendants' continuation of these practices is thus appropriate and necessary.

**COUNT I**
**WISCONSIN DECEPTIVE TRADE PRACTICES ACT**
**Wis. Stat § 100.18**
**(By Plaintiff Individually and On Behalf of All**
**Class Members Against All Defendants)**

48.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

17

49.     Plaintiff brings this action on behalf of herself and on behalf of the Class against Defendants for violations of Wisconsin's Deceptive Trade Practices Act, Wis. Stat § 100.18 ("DTPA").

50.     The DTPA defines a deceptive representation as including a failure to state the price or amount that must be paid for the advertised services, charging a higher price than the advertised price, marking up the price, or substituting services of inferior value or quality.  Wis. Stat. § 100.18(2)(a)(1)-(4).  Defendants made such deceptive representations with the intent to induce customers into service contracts with CenturyLink.

51.     As alleged herein above, Defendants, through employees and agents, have engaged in a pattern and practice of deceptive and misleading activity, and collection of monies by way of false pretenses. Defendants engaged in deceptive, unconscionable, and/or unfair business practices by, among other things, causing the members of the Class to be signed up for services they did not request or authorize, billing at higher rates than those quoted, billing for early termination fees, continuing to bill Class Members after they canceled their accounts, and adding charges and requiring consumers to pay for previously undisclosed and unadvertised fees in connection with Defendants' services, and substituting services of lower quality. The amounts charged, collected, and auto-deducted from bank accounts (or otherwise billed and collected) are material terms to Class Members. Deceptively overcharging Class Members in a manner they are unlikely to detect is a material misrepresentation or an omission of material fact to Members of the Class. As explained in the *Heiser* complaint, the foregoing occurred and injured Class Members because Defendants maintained an incentive program for their employees and agents which provided financial incentives to them to engage in such conduct.

52.     Defendants made their untrue, false and deceptive representations concerning their telecommunications services with the intent to induce Plaintiff and members of the Class to purchase Defendants' services in violation of the DTPA.  The amounts billed to each Class Member each month are relatively small ($200 or less) and therefore, Defendants know that certain Class Members will not actively monitor and immediately seek corrections when appropriate.  Defendants thus exploit and take advantage of the fact that many Class Members may not learn of Defendants' deceptive overcharging for many billing cycles.

53.     Defendants' representations materially induced Plaintiff's decision and those of members of the Class to purchase services from CenturyLink.

54.     Plaintiff and the Class lost money and were injured and harmed by Defendants' deceptive, unconscionable, and/or unfair business practices in amounts to be determined at trial.

55.     The conduct described herein is continuing. The conduct was done for profit as a deliberate corporate policy rather than as an isolated incident, was morally wrong, callous, and/or oppressive.

56.     As a result of the foregoing Plaintiff and the Class are entitled to, among other things, pecuniary damages, an accounting, and reasonable attorneys' fees and costs.  Wis. Stat. § 100.18(11)(b)(2).

**COUNT II**
**BREACH OF CONTRACT**
**(By Plaintiff Individually and On Behalf of**
**All Class Members Against All Defendants)**

57.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

19

58.     Plaintiff and each member of the Class entered into contracts with Defendant for the provision of various telecommunications services at certain costs.  Plaintiff and Class Members performed under the contracts.

59.     As explained above, Defendants maintained an incentive program(s) for their employees and agents that provided financial incentives to them to charge Class Members for services Class Members did not order or to overcharge those Class Members for services they did order.

60.     Defendants overcharged Plaintiff and members of the Class in breach of their contracts.

61.     Plaintiff and Class Members were charged for services which they did not purchase, or for services they purchased but were charged excessive amounts which they did not agree to pay.

62.     Plaintiff and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

63.     As a result of the foregoing, Plaintiff and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

**COUNT III**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
**(By Plaintiff Individually and On Behalf of**
**All Class Members Against All Defendants)**

64.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

65.    Wisconsin law recognizes that a special duty of good faith and fair dealing arises out of the contractual relationship, the breach of which is a separate tort independent from any corresponding breach of contract.

66.    By the actions herein, Defendants breached that duty and did not act fairly or in good faith.

67.    Plaintiff and the Class were injured, harmed, and incurred financial loss by way of Defendants' conduct in amounts to be determined at trial.

68.    As a result of the foregoing, Plaintiff and the Class are entitled to, among other things, compensatory damages, an accounting, and all other relief deemed just and equitable by the Court.

## COUNT IV
## ACCOUNTING
### (By Plaintiff Individually and On Behalf of
### All Class Members Against All Defendants)

69.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

70.    As explained above, Defendants maintained an incentive program(s) for their employees and agents that provided financial incentives to such employees and agents to charge Class Members for services that they did not order and/or to overcharge Class Members for services they did order.

71.    As a result, Defendants maintained a system of overcharging and collecting from Plaintiff and the other members of the Class monies which they did not agree to pay.

72.    As a result of the foregoing, Defendants have received money, a portion of which is due to Plaintiff and the Class.

73.    The amount of money due from Defendants to Plaintiff and the Class is currently unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the Class' transactions and accounts with Defendants.  Plaintiff, on behalf of the Class, therefore demands an accounting of the aforementioned transactions from Defendants and payment of the amount found due, which Defendants have failed and refused, and continue to fail and refuse, to pay such sum.  Such accounting should be conducted at Defendants' sole cost and expense.

74.    Defendants maintained sole custody and control of their accounting and billing systems. Defendants also had exclusive access to the internal incentive programs offered to their agents and employees. Many Class Members agreed to have Defendants auto-deduct payments from their bank accounts, placing trust in Defendants to only bill them amounts that Class Members agreed to pay and in good faith. By way of the foregoing, Defendants have had a special relationship with Plaintiff and the Class and had a duty to account accurately for the amounts charged and collected for services performed and provided.

75.    Defendants failed to bill and collect sums from Plaintiff and the Class as required by their agreements with Plaintiff and Class Members.  Plaintiff and the Class Members trusted and relied on Defendants to bill them accurately and only collect amounts properly due.  Many Class Members unsuspectingly provided Defendants authorization for automatic payments and withdrawals. There is a widespread problem with overbilling and inaccurate collections by Defendants which requires review and oversight.

76.    An accounting and audit is necessary. A balance due from the Defendants to Plaintiff and the Class can only be ascertained through such an accounting.

77.     Given their superior knowledge and access to records, as well as their duty to only bill and collect monies in good faith, Defendants are in the superior and exclusive position to confirm the accuracy of their accounts and collections from Class Members and provide refunds.

78.     Defendants should be ordered to provide an accounting of each Class Member's account, to ensure that each Class Member has not been overcharged. To the extent they have been overcharged (as with Plaintiff), Defendants should be ordered to immediately refund the difference with interest, along with all other relief found just and equitable in the premises, including but not limited to reasonable attorneys' fees and costs.

**COUNT V**
**UNJUST ENRICHMENT**
**(By Plaintiff Individually and On Behalf of**
**All Class Members Against All Defendants)**

79.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

80.     As a result of Defendants' unlawful and deceptive practices described above, Defendants have been unjustly enriched in retaining revenues derived from Plaintiff and Class Members' payments for Defendants' services.  Retention of that revenue under these circumstances is unjust and inequitable because Defendants used illegal, deceptive, and unfair business practices to induce or force customers to open accounts, or purchase, or maintain services and products.

81.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, along with all other relief found just and equitable, including reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class Members, prays for judgment as follows:

## CLASS CERTIFICATION

1.      For an order certifying the proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.      That Plaintiff be appointed as the representative of the Class; and

3.      That the undersigned counsel for Plaintiff be appointed as Class Counsel.

## AS TO ALL CAUSES OF ACTION

1.      For an order finding in favor of Plaintiff and the Class Members on all counts asserted herein;

2.      For an order declaring that Defendants' conduct violates the DTPA;

3.      For an order enjoining Defendants from continuing their unlawful, deceptive marketing and billing practices as described herein;

4.      For all actual, consequential, statutory, and incidental losses and damages, according to proof;

5.      For an accounting;

6.      For reasonable attorneys' fees and costs, where permitted by law;

7.      For prejudgment interest on all amounts awarded;

8.      For costs of suit herein incurred; and

9.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Respectfully Submitted,

**HELLMUTH & JOHNSON, PLLC**

Date:  August 21, 2017

By:  _s/ Richard M. Hagstrom_
Richard M. Hagstrom, MN ID # 039445
Anne T. Regan, MN ID #333852
Nicholas S. Kuhlmann, WI ID # 1047286
Jason Raether, MN ID # 394857
8050 West 78th Street
Edina, MN  55439
Telephone:  (952) 941-4005
Facsimile:  (952) 941-2337
rhagstrom@hjlawfirm.com
aregan@hjlawfirm.com
nkuhlmann@hjlawfirm.com
jraether@hjlawfirm.com

-and-

OF COUNSEL

**ROXANNE CONLIN & ASSOCIATES, PC**

Roxanne Barton Conlin, Bar No. AT0001642
319 Seventh Street, Suite 600
Des Moines, IA  50309
Telephone:  (515) 283-1111
Facsimile:  (515) 282-0477
Roxlaw@aol.com